IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HERMAN BARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-138-RAH-KFP |
| ) | [WO] |
| CITY OF OPELIKA, ALABAMA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 32.) The motion has been fully briefed and is ripe for review. For the following reasons, the motion is due to be granted in part and denied in part.

### I. BACKGROUND

Herman Barnes is a business and property owner in Opelika. He and the City of Opelika have been at odds since 2011 over various issues concerning Barnes' purchase, development, use, and sale of properties, primarily those located on First Avenue. This lawsuit results from some of their more recent issues.

Barnes has experienced several problems attempting to sell his properties. For instance, in 2011, he attempted to sell a storage warehouse located at 1600 Spring Drive. (Doc. 31 at 7.) A prospective buyer of the property was told by City representatives that the property had drainage issues and was about to be condemned. (*Id.*) Both statements were false; the property has never had any drainage issues and has never been condemned. (*Id.* at 8.) The buyer backed out of the sale transaction because of the City's statements.

1

(*Id*.)  In March 2020, a prospective buyer for another of Barnes' properties opted not to purchase the property after speaking with the City. (*Id*.) According to the buyer, the City had "scared him off" from buying the property. (*Id*. at 9.)

The City has also seized property from Barnes and created licensing hurdles for him. At some point before 2022, the City removed and seized a sign from one of Barnes' properties that said "BARNES Commercial Property" without notifying him or receiving consent. (*Id*. at 10.) The City allegedly used the development of a neighboring property into a restaurant as a pretext for removing the sign. (*Id*.) The City did not compensate him for the sign. (*Id*.)

In June 2020, Barnes hired Dorris Signs to prepare proposed signage for a property he owned at 1001 First Avenue that he wanted to advertise as "The Icehouse." (*Id*. at 11.) Ricky Dorris, affiliated with Dorris Signs, called the City about the proposed sign. (*Id*. at 12.) Marty Ogren, Assistant Planning Director with the City, responded that Barnes could not use the Icehouse name in the building's signage "because that's misleading – he's not selling that product," therefore Barnes "could not erect signage on the property because [Ogren] did not approve of the content of the sign's message." (*Id*.) Barnes claims this response to his "applied-for sign" was based upon the City's sign regulations. (*Id*. at 16.)

Barnes also alleges that the City interfered with his contractual relationship with Farmers & Merchants Bank.  In 2021, in connection with the development of his First Avenue property, Barnes obtained a $300,000 loan guarantee letter from the bank. (*Id*. at 12–13.) City officials, however, contacted and spoke with Barnes' loan officer at the bank, after which the bank refused to provide Barnes with funding for his project. (*Id*. at 13.)

2

Barnes filed this lawsuit on March 18, 2022. After amending his complaint twice, the governing complaint – the Second Amended Complaint – brings claims under the First Amendment, Fourteenth Amendment, and Alabama state law against the City of Opelika and Marty Ogren in his individual capacity.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A district court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes them "in the light most favorable to the plaintiff," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Id*. Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555. A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

The Defendants move to dismiss the Second Amended Complaint for a variety of reasons.  The Court will address each turn.

**A.  Count One – Violation of First Amendment Free Speech Rights.**

Count One alleges the Defendants violated his First Amendment rights when they denied his request to display a sign for "The Icehouse" because of its content.  Barnes further alleges in Count One that the City's sign regulations, upon which the denial was made, are unconstitutional and therefore invalid and null.  Barnes says that "the City should allow the applied-for-sign to be posted" and should pay him damages and legal fees. (Doc. 31 at 16, 20.)  In their Motion to Dismiss, the Defendants argue that Barnes has not pled sufficient facts to show that he has standing because the Second Amended Complaint makes clear that the City never "actually denied any formal request" to install the sign rather than the informal request that was actually made. (Doc. 32 at 4.)

The Court finds that Barnes has pled sufficient facts to show that he has standing to bring this claim.  Paragraph 72 of the Second Amended Complaint references Barnes' "request to display a sign" and Paragraph 75 references his "applied-for sign" that was denied under the Defendants' application of the City's sign regulations. (Doc. 31 at 15–16.)  While this pleading is somewhat vague, Barnes has plausibly shown standing as it concerns his proposed sign.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570.  After discovery, if the actual facts show that Barnes never submitted a request for a sign under the City's sign regulations, the City certainly can raise this issue again through a

dispositive motion.  The Defendants' motion to dismiss Count One for lack of standing is due to be denied.

## B.  Count Two – Violation of Fourteenth Amendment Right to Equal Protection

Count Two alleges the Defendants have violated Barnes' rights to equal protection under the Fourteenth Amendment when the City removed his "existing sign while allowing the speech of governments and other favored speaker and organizations." (Doc. 31 at 17.) The City moves to dismiss this count, arguing that it is time-barred.

In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth Amendment, as enforced through 18 U.S.C. § 1983.  *Lufkin v. McCallum*, 956 F.2d 1104, 1106 & n.2 (11th Cir. 1992) (noting that the proper statute of limitations for § 1983 claim is the forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years); *see also* Ala. Code § 6-2-38(l) ("[A]ctions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").  Even though state law determines the length of the limitations period, federal law governs when the statute of limitations begins to run, i.e., when the cause of action accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, "'[accrual occurs] when the plaintiff has a complete and present cause of action' . . . that is, when 'the plaintiff can file suit and obtain relief.'" *Id.* (brackets in original) (citations omitted).  The general federal rule is that a cause of action "will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the

injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted).

The Second Amended Complaint's Equal Protection claim is based upon the City's removal of "Barnes' existing sign." (Doc. 31 at 17.) The referenced sign is the "BARNES Commercial Property" sign. (Doc. 31 at 10–11.) While Barnes does not date the City's actions, Barnes does concede in the Second Amended Complaint that "this example happened beyond the statute of limitations." (*Id.* at 11.) Accordingly, this count is time-barred and therefore is due to be dismissed to the extent it is based on the "BARNES Commercial Property" sign. To the extent Barnes claims that his Equal Protection claim is based on another action, which he seems to assert in his responsive brief, he certainly has not sufficiently pleaded it. The Court will not try to divine facts that have not been sufficiently pled, especially since Barnes has already amended his complaint twice. Count Two is due to be dismissed.

**C.  Count Three – Municipal Liability Under Ala. Code § 11-47-23**

Count Three asserts municipal liability against the City for the City's wrongs. Presumably, "the City's wrongs" are those otherwise referenced in the Second Amended Complaint and which are made the basis of the claims under the First Amendment, the Equal Protection Clause, and tortious interference. The City argues that Ala. Code § 11-47-23 is not a substantive cause of action, but instead a statutory notice requirement that must be met before filing suit against the City. The Court agrees. Section 11-47-23 is merely a statutory notification requirement; that is, a statute of nonclaim. It is not a

substantive claim for relief. *See Patrick v. City of Florala*, 793 F. Supp. 301, 303–04 (M.D. Ala. 1992). Therefore, the Court will dismiss this claim.

### D. Count Four – Tortious Interference with Contract

Count Four is a state law claim for tortious interference with contract. Barnes alleges the Defendants tortiously interfered with his business relationships with purchasers of properties and with his bank. The City argues in response that the claim is an intentional tort and therefore, as a municipality, it cannot be held liable for the intentional acts of its employees. Ogren asserts that he is entitled to state-agent immunity.

As it concerns the City's request for dismissal of this claim, it is correct that it cannot be sued for an intentional tort committed by Ogren or any other employee. *See Ex parte Tuskegee*, 932 So. 2d 895, 910–11 (Ala. 2005) (discussing Ala. Code § 11-47-190); *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000). And a claim for tortious interference with contract is an intentional tort. *See Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003) (a claim of tortious interference with contract requires "*intentional* interference by the defendant with the contract or business relation" (emphasis added) (citation omitted)); *White Sands Grp., LLC v. PRS II, LLC*, 32 So.3d 5, 14 (Ala. 2009). The City is due to be dismissed from Count Four.

On the other hand, the Court finds that Ogren is not entitled to dismissal from Count Four. Ogren claims entitlement to state-agent immunity, which grants immunity to state employees unless their actions were willful, malicious, fraudulent, in bad faith, beyond their authority, or taken under a mistaken interpretation of the law. *See Ex parte Moulton*, 116 So.3d 1119, 1142–43 (Ala. 2013) (quoting *Ex parte Cranman*, 792 So.2d 792, 405

(Ala. 2000)). Ogren claims that the Second Amended Complaint shows that he "was clearly exercising his judgment in the administration of a department or agent of government" and that there is no allegation that he acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. (Doc. 32 at 8.)

The Second Amended Complaint details certain factual allegations that undercut Ogren's blanket assertions of his entitlement to state-agent immunity, such as the Defendants' efforts to *obstruct* Barnes' purchase, development, and sale of properties; *patently false representations* by the Defendants to potential purchasers to scare them off; *false* reasons asserted by Ogren to remove Barnes' commercial signage; Ogren's *refusal* to allow a sign based on its content in violation of the First Amendment; and Defendants' contacts with Barnes' bank in an effort to have his funding pulled. Further, the City argues for municipal immunity because of Ogren's allegedly *intentional* conduct, an allegation that would allow the City to escape liability for said conduct but undermines Ogren's claims of immunity. (Doc. 32 at 8.) As such, the Second Amended Complaint plausibly asserts facts, although fairly vague, that suggest that Ogren is not entitled to state-agent immunity.

But more importantly, while the Second Amended Complaint is not a model of clarity and specificity, this simply is not the appropriate stage to assess Ogden's entitlement to state-agent immunity. As the Alabama Supreme Court has stated, "[a] motion to dismiss is typically not the appropriate vehicle by which to assert . . . State-agent immunity and . . . normally the determination as to the existence of such a defense should be reserved until

the summary-judgment stage, following appropriate discovery." *Ex parte Ala. Dep't of Youth Servs.*, 880 So. 2d 393, 398 (Ala. 2003) (quoting *Ex parte Ala. Dep't of Mental Health & Mental Retardation*, 837 So. 2d 808, 813–14 (Ala. 2002)). "[I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.]." *Ex parte Alabama Dep't of Mental Health & Mental Retardation*, 837 So. 2d at 814 (quoting *Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000)). Ogren's motion to dismiss on this basis is premature and due to be denied. He may reassert this defense at the summary judgment stage following appropriate discovery.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

(2) As to Defendant the City of Opelika, the motion is GRANTED to the extent the City seeks dismissal of Counts Two, Three and Four and DENIED to the extent the City seeks dismissal of Count One.

(3) As to Defendant Marty Ogren, the motion is GRANTED to the extent Ogren seeks dismissal of Counts Two and Three and DENIED to the extent Ogren seeks dismissal of Counts One and Four.

(4) The Second Amended Complaint shall proceed against the City and Ogren on Count One for Violation of the First Amendment, and against Ogren only on Count Four for tortious interference with contract.

**DONE** on this the 30th day of November, 2022.

                                                /s/ R. Austin Huffaker, Jr.
                                      R. AUSTIN HUFFAKER, JR.
                                      UNITED STATES DISTRICT JUDGE