IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HERMAN BARNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-138-RAH-KFP |
| ) | [WO] |
| CITY OF OPELIKA, ALABAMA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This is a speech case. Pending before the Court is the Defendants' *Motion for Summary Judgment*. (Doc. 62.) The motion is fully briefed and thus ripe for decision. For the reasons set forth more fully below, the motion is due to be **GRANTED**.

## BACKGROUND

In June 2020, Plaintiff Herman Barnes contacted Dorris Signs about constructing a commercial sign for a commercial warehouse building owned by a Barnes-affiliated company. The proposed sign was to advertise the name "The Icehouse" outside of a building located at 1001 1st Avenue in Opelika, Alabama. That building—historically home to businesses that made and sold ice—was colloquially known as the Icehouse Building.

In July 2020, Barnes met with Ricky Dorris of Dorris Signs to discuss the proposed signage. During that meeting, Dorris called Marty Ogren, Assistant Planning Director for the City of Opelika, placed Ogren on speakerphone so that Barnes could overhear the conversation, and discussed the proposed signage. Ogren, after hearing Dorris's explanation of the proposed sign, stated that the sign as

1

described would violate Opelika's sign regulations because it would identify a business, product, or service that was not related to or available at the premises where the sign was to be located. And indeed, in July 2020, Opelika's sign regulations countenanced this bifurcation between "on-premises" and "off-premises" advertising. (*See* doc. 62-1 at 2 ("The City's sign regulations . . . prohibited 'off-premises commercial' or 'outdoor advertising' that had no connection to the building where the sign is located.").)[1] Ogren now says, however, that during that phone conversation with Dorris he misunderstood where the sign was to be placed.

Barnes later communicated with Charles Mosley, the Planning Director for the City of Opelika and Ogren's boss, regarding the signage issue. In a series of emails in July and August of that same year, Mosley explained Opelika's sign regulations and communicated to Barnes that Barnes's desired sign required a permit. To that end, Mosley sent Barnes an application for the permit. Importantly, Mosley also told Barnes that, if his business was called "Icehouse," he *would* be allowed to display the sign outside of the 1001 1st Avenue location even if the business did not sell ice.

Still, despite the green light from Mosley, Barnes never submitted an application for the permit. According to Barnes, he never received these emails from Mosley and, regardless, he understood that any permit application would be denied.

In November 2021, Opelika adopted new sign regulations. The new regulations, unlike the old ones, allowed off-premises advertisements.

Barnes filed this lawsuit in March 2022. In his Second Amended Complaint, Barnes brought four claims against the City of Opelika and Marty Ogren. Counts Two and Three were dismissed at the motion to dismiss stage, as was Count Four

---

[1] For the sake of clarity, documents will be referenced by their CM/ECF document page numbers.

against the City of Opelika.  In his summary judgment briefing, Barnes agrees to the voluntary dismissal of Count Four against Ogren.  Accordingly, all that remains of Barnes's original claims is Count One—a First Amendment claim for violating Barnes's free speech rights.

## STANDARD OF REVIEW

Summary judgment is appropriate where the materials in the record show there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its responsibility, the moving party must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotation marks omitted).

To prevent summary judgment, a factual dispute must be both material and genuine.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  A fact is "material" if it has the potential of "affect[ing] the outcome" of the case.  *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 248).  And to raise a "genuine" dispute of material fact sufficient to preclude summary judgment, "the nonmoving party must point to enough evidence that 'a reasonable juror could return a verdict'" in his favor.  *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is insufficient to defeat a motion for summary judgment.  *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

Although Barnes's Second Amended Complaint is vague as to whether Barnes brings a facial or as-applied challenge, his summary judgment briefing makes clear

3

that his challenge is largely a facial one. (*See* Doc. 65 at 6 ("Plaintiff Barnes . . . alleg[es] the Defendants' sign ordinance was a facial violation of the First Amendment[.]"); *id.* at 8 ("Barnes asserted his First Amendment *facial* challenge to the unconstitutionality of the provisions of City's ordinance prohibiting on-site and off-site advertising." (emphasis in original)); *id.* at 12 ("Again, Barnes raises a facial challenge to the City's sign ordinance[.]").) For the purposes of thoroughness, however, the Court will also consider Barnes's First Amendment claim as an as-applied challenge to the regulation.

### A. Barnes's Facial Challenge

Barnes argues that "the ordinance . . . defining on-site commercial and off-site commercial signs[] violated his First Amendment right to use 'Icehouse' at his property located at 1001 1st Avenue." (Doc. 65 at 12.) He appears to assert two legal theories as to why the regulation is facially unconstitutional: (1) the regulation's distinction between "on-site" and "off-site" advertising is a content-based speech restriction that does not pass strict scrutiny; and, alternatively, (2) even if the "on-site" and "off-site" distinctions are not content based, the regulation nevertheless fails intermediate scrutiny. The Defendants respond with numerous arguments. The Court will only address one—mootness—because that analysis is dispositive.

"Under Article III of the Constitution, federal courts may only hear 'cases or controversies.'" *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250 (11th Cir. 2008) (citation omitted). But "[b]y its very nature, a moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" *Nat'l Advert. Co. v. City of Mia.*, 402 F.3d 1329, 1332 (11th Cir. 2005) (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004)). This is because "[i]f a lawsuit is mooted by subsequent

4

developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion." *Id.*

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). "A change in the law, such as amending a zoning ordinance as here . . . , can give rise to mootness." *Nat'l Advert. Co.*, 402 F.3d at 1332. In the Eleventh Circuit, "[w]hen a subsequent law brings the existing controversy to an end[,] the case becomes moot and should be treated accordingly." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) (citation and internal quotation marks omitted). *See also Nat'l Advert. Co.*, 402 F.3d at 1332 ("This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation.").

The parties agree that the Opelika regulation at issue has been amended and that the current regulation does not regulate content. According to Barnes, however, his facial challenge to the Opelika regulation is not moot because it falls into an exception to the mootness doctrine. (*See* doc. 65 at 8–9.) And indeed, "[w]hile [the] general rule is that repeal of a statute renders a legal challenge moot, an important exception . . . is that mere voluntary termination of an allegedly illegal activity is not always sufficient to render a case moot[.]" *Nat'l Advert. Co.*, 402 F.3d at 1333. This exception exists because without it "the federal courts would be compelled to dismiss a case while leaving the defendant 'free to return to his old ways.'" *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F. 3d 1248, 1255 (11th Cir. 2017) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)), *abrogated on other grounds by Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).

5

In the context of legislative repeal, "[t]he key inquiry in this mootness analysis is whether the evidence leads [the court] to a reasonable expectation that the City will reverse course and reenact the allegedly offensive portion of its Code[.]'" *Id.* at 1256 (citations omitted). There are "three broad factors to which courts should look for guidance in conducting th[is] inquiry." *Id.* at 1257. First, "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate . . . jurisdiction." *Id.* This prong considers, among other things, the timing of the repeal. "Second, [the court] ask[s] whether the government's decision to terminate the challenged conduct was unambiguous." *Id.* (citation and internal quotation marks omitted). And the final consideration is "whether the government has consistently maintained its commitment to the new policy or legislative scheme." *Id.* Crucially, the party challenging the repealed regulation bears the burden of "presenting affirmative evidence that its challenge is no longer moot. Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions." *Nat'l Advert. Co.*, 402 F.3d at 1334. *See also Coral Springs*, 371 F.3d at 1328–29 ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.").

Barnes does not argue or provide evidence that Opelika will reenact the regulation he challenges. The closest he comes is stating that the regulation at issue here was amended *after* he filed this lawsuit, but this assertion and the evidence he provides to support it—which, to reiterate, *constitutes the extent of Barnes's evidence of reasonable expectation of reenactment*—has major faults. (*See, e.g.*, doc. 65 at 7 ("Nearly two years later, in June 2022, and after Barnes filed his Complaint, these ordinances were removed[.]").) First, Barnes never provides any legal support for this argument. *See Flanigan's Enters.*, 868 F.3d at 1259 ("[T]he timing of the repealing legislation is not dispositive if the court concludes from other evidence

6

that there is no reasonable expectation that the governmental actor will reenact the challenged provisions."). And second, the assertion that the regulation was repealed after Barnes filed his lawsuit is factually wrong: "While Plaintiff cites to an unauthenticated and hearsay cover page indicating the City's zoning ordinance was last amended on June 7, 2022, that was not the date the relevant *sign* regulations were amended." (Doc. 68 at 6 (emphasis in original) (citing doc. 65 at 8 and doc. 65-3).) "In fact, the relevant sign regulations were amended in November[] 2021, four months *before* Plaintiff filed his Complaint." (*Id.* (citations omitted).) And in contrast to Barnes, the Defendants provide plenty of evidence showing that the regulation was actually changed before Barnes filed this lawsuit. (*See, e.g.,* doc. 62-1 ("The current regulations, adopted on November 16, 2021, allow off-premises advertising."); doc. 62-3 ("On November 16, 2021, the City adopted new sign regulations which allowed off-premise advertising.").)

Barnes has failed to show under his facial challenge that there is a reasonable expectation Opelika will reverse course and reenact the allegedly offensive portion of the challenged regulation. As such, his facial challenge to the Opelika regulation is moot.

### B. Barnes's As-Applied Challenge

Although Barnes's briefing only provided argument as to his facial challenge to the regulation, his Second Amended Complaint requested a damages remedy, suggesting that Barnes also intended to forward an as-applied challenge. Accordingly, to the extent Barnes seeks damages for a harm he suffered as a consequence of the regulation's application, that claim is not moot and must be dealt with separately from his facial challenge. *See Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1119 (11th Cir. 2003) ("Because [the plaintiff] has requested damages, however, the changes made to the ordinance do not make this case moot.").

The Defendants argue that Barnes lacks standing to bring his as-applied claim because he was not injured by any application of the regulation. According to them, this is because Barnes never applied for, and thus was never denied, the permit to display the sign.

"To have a case or controversy, a [plaintiff] must establish that he has standing, which requires proof of three elements." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (internal quotation marks omitted)). To show standing, a plaintiff must prove (1) an injury in fact that (2) is fairly traceable to the defendant's actions and is (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[E]ach element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) (quoting *Lujan*, 504 U.S. at 561).

The parties agree that Barnes never applied for, and thus was never formally denied, a permit. While there certainly would have been an injury had Barnes applied for and been denied a permit, *see Tinsley Media, LLC v. Pickens County, Ga.*, 203 F. App'x 268, 272 (11th Cir. 2006) ("[Plaintiff] has shown 'injury in fact' because it was denied a permit to erect the billboards."), he fails to show an injury where, as here, he is basing the alleged injury off his mere belief that any application for a sign permit would have been denied. Put simply, Barnes cannot mount an as-applied challenge to a regulation that was never formally invoked or applied to him. *See Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) ("A challenge to the application of a city ordinance does not automatically mature at the zoning counter. In order for the city to have 'applied' the ordinance . . ., a city official with sufficient authority must have rendered a decision regarding [the]

8

proposal."); *Trinity Outdoor, L.L.C. v. Oconee Cnty. Ga.*, No. CIV.A. 3:02-CV-67, 2003 WL 25301942, at *6 (M.D. Ga. May 21, 2003) ("Here, because [the plaintiff] never applied for a permit under the sign regulations . . . , there is no defined dispute."); *Victory Media Grp., LLC v. City of Roswell*, No. 1:22-CV-897-SDG, 2023 WL 6326640, at *3 (N.D. Ga. Sept. 28, 2023) ("Injury . . . must be grounded in more than a City employee's informal prediction of how an ordinance would be enforced." (citing *Digital Properties, Inc.*, 121 F.3d at 590)). Accordingly, Barnes lacks standing to bring this claim because there never was a defined dispute or concrete harm.[2]

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. Defendants' *Motion for Summary Judgment* (doc. 62) as to Count One is **GRANTED**. Count Four is dismissed by concession of the Plaintiff.
2. As there are no further claims, a separate judgment will issue.

**DONE** on this the 12th day of July, 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Indeed, the evidence exemplifies why standing requires a demonstration of injury in fact. Here, Ogren's affidavit indicates that he was wrong during his phone call with Dorris, and Mosley's affidavit indicates that an *application might have been approved had Barnes applied for the permit*.